# UNITED STATES of America

v.

**Joseph IANNELLI, a/k/a "Joe" a/k/a "45", et al.**

**Crim. A. No. 77–028.**

United States District Court, W. D. Pennsylvania.

April 13, 1977.

Stephen I. Goldring, Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

Thomas A. Livingston, Stanton D. Levenson, William F. Manifesto, B. L. McGinley, Richard H. Martin, Joseph D. Cain, Anthony J. LaLama, Gary B. Zimmerman, Pittsburgh, Pa., Irving M. Green, New Kensington, Pa., for defendants.

WEBER, Chief Judge.

The Defendants have presented a joint motion to suppress evidence obtained through the interception of wire communications and pen register surveillance. Three arguments are raised:

The inadequacy of the application for the interception order to set forth the

need for interception because of the failure of ordinary investigative methods;

The failure of the government to comply with the courts' orders requiring the submission of progress reports; and

The improper and unlawful installation of pen registers.

## I.

The Defendants argue that the application for a court order to intercept the telephone messages would not satisfy the requirement of showing that normal investigative procedures had failed or were insufficient. 18 U.S.C. 2518(1)(c) requires that the application for authorization for interception of wire or oral communications include:

"(c) a full and complete statement as to whether or not other investigative procedures have been tried and failed *or* why they reasonably appear to be unlikely to succeed if tried or to be too dangerous;" (emphasis added).

2518(1)(c) is written in the disjunctive. A literal reading would suggest that the application show that either normal investigative procedures have been tried and have failed, or, if reasonably likely to fail, a statement to that effect. However, this interpretation would result in the hard cases, such as gambling investigations, that mere boiler plate language could be used to satisfy the requirement. However, the Supreme Court has directed otherwise:

"Congress legislated in considerable detail in providing for applications and orders authorizing wiretapping and evinced the clear intent to make doubly sure that the statutory authority be used with restraint and only where the circumstances warrant the surreptitious interception of wire and oral communications. *These procedures were not to be routinely employed as the initial step in criminal investigation.* Rather, the applicant must state and the court must find that normal investigative procedures have been tried and failed or reasonably appear to be unlikely to succeed if tried or to be too

dangerous." (emphasis added) *United States v. Giordano*, 416 U.S. 505, 515, 94 S.Ct. 1820, 1826, 40 L.Ed.2d 341 [1974].

 Thus, while warning that wiretaps are not to be used as a matter of course, or as the first step in a criminal investigation, they still may be used upon a proper showing that normal investigative procedure is unlikely to succeed. While the typical gambling investigation may require telephonic interceptions, a mere conclusory statement without more would not satisfy the requirement of 2518(1)(c). But, given an account of what investigation was employed, how far it extended and an indication of the impasse reached, admittedly without resort to every conceivable investigative tool, an affidavit would appear to satisfy the requirement of 2518(1)(c) that normal investigative procedures "reasonably appear to be unlikely to succeed if tried."

In *United States v. Armocida*, 515 F.2d 29 [3d Cir. 1975], the court stated that the government's showing of compliance with the statute should be tested in a practical and common sense fashion. In *United States v. Vento*, 533 F.2d 838 [3d Cir. 1976] involving the use of electronic surveillance of a conspiracy to distribute dangerous drugs, the court noted at the outset that there was "little reason to believe that the government could have obtained convictions here if the recorded conversations had not been introduced." (p. 846). Defendants in *Vento*, as in the present case, argued that the government had failed to exhaust investigative procedures prior to the application for the wiretap order. The defendant argued that the government should have shown the use or attempted use of procedures including subpoena testimony of informants, offers of immunity to informants, the more extensive use of physical surveillance, and the use of undercover agents. The court held that there was no requirement that every investigative methodology be exhausted prior to a Section 2518 authorization.

The argument in *Vento* relied exclusively on the first clause of 2518(1)(c) and ignored the disjunctive language of that provision.

"To adopt the defendants' contention in this respect would be to misapprehend the purposes of Congress in enacting this precondition to authorization of a wiretap."

" . . . It is sufficient that the government show that other techniques are impractical under the circumstances and that it would be unreasonable to require pursuit of those avenues of investigation. The government must, however, fully explain to the authorizing judge the basis for such a conclusion." 533 F.2d at p. 849.

In *Vento* it was shown that witnesses that had past contacts with the defendants had limited utility, prolonged surveillance was not possible, and search warrants were insufficient to provide the necessary information. This is essentially the same set of facts set forth by the United States in its applications in the present case.

The court of appeals cited the standards set forth in *United States v. Curreri,* 388 F.Supp. 607 [D.Md.1974], for determining the issuance of a wiretap order upon the allegations that other investigatory procedures appear unlikely to succeed. These criteria include that the determination

"ordinarily initially be based upon some expertise or experience in the investigation of similar crimes providing knowledge of the techniques of investigation available, their success in the past under varying circumstances, the prevailing and common *modus operandi* of persons engaged in criminal activity of the sort being investigated as well as upon an intimate knowledge of the methods and results of investigative techniques which had been employed up to that time in the investigation at hand." 388 F.Supp. at p. 622.

In this case there were two applications for wiretap interceptions made to two different judges of this court. The first application was supported by affidavits of Agent William Corvin of the FBI and Postal Inspector Nicholas Cook. Pages 25 thru 27 of the affidavit of Corvin set forth in consider-able detail reasons why the normal investigative techniques were insufficient in the circumstances of the present case, and further reasons why such techniques are usually unsuccessful in cases of this category based on their experience with such cases. A second application was made for an additional wiretap based in part on the contents of conversations monitored under the original wiretap. A third affidavit was supplied with this second application containing a full and complete statement of the reasons why other investigative techniques would not be successful. The original affidavits for the first wiretap application were incorporated by reference and attached to the application for the second wiretap.

■ The defendants have alleged that this "tacking" of affidavits submitted in support of the first application onto the affidavit submitted in support of the second application is not permissible under the statute. While this might be true if the original affidavits were insufficient and, therefore, taint the use of any evidence obtained under the first interception in support of the second, we find no difficulty in this situation where the original affidavits meet the requirement of the statute. In *United States v. Cantor,* 328 F.Supp. 561 [E.D.Pa.1971], the question of reliance on an affidavit submitted in support of a former application was raised. The court stated:

"The information from the New Jersey wire tap was a part of the facts and circumstances which formed the basis of affiant's belief that probable cause for a wire tap order existed. Under this statute it should be a part of the affidavit so that its sufficiency can be scrutinized by the independent judge whose function it is to consider all of the facts. Indeed, the statute appears to make it mandatory that the affiant disclose all facts which affiant deems pertinent on the issue of 'probable cause', regardless of how, when or where such information was obtained. I conclude that inclusion of the information from the New Jersey wire tap in the

affidavit was proper." 328 F.Supp. at pp. 564–565.

A practical approach to the consideration of this question is required.

"Congress, in its wisdom, did not attempt to require 'specific' or 'all possible' investigative techniques before orders for wire taps could be issued. As *United States v. Giordano*, 416 U.S. 505, 515, 94 S.Ct. 1820, 1827, 40 L.Ed.2d 341 [1974], states—wire tap 'procedures were not to be routinely employed as the initial step in criminal investigation,' but it is equally true 'that the statute does not require the government to use a wire tap only as a last resort.' *United States v. Kerrigan*, 514 F.2d 35 [9th Cir. 1925]; *United States v. Staino*, 358 F.Supp. 852, 856–7 [E.D.Pa. 1973]." *United States v. Smith*, 519 F.2d 516 [9th Cir. 1975].

■ Our examination of the affidavits in this case leads us to the conclusion that they meet the standards contemplated by the courts in the cases which have considered the problem of sufficiency. They sufficiently state reasons why normal investigative procedures would not be successful and they were sufficient to induce two other judges of this court to issue the authorization to intercept wire communications in this case.

## II.

■ The defendants have contended that the government failed to submit the various progress reports as required by the orders of Judge Teitelbaum and Judge Rosenberg

in this case. Our examination of the records reveals that the required reports were submitted on each of the required occasions. With respect to the wiretap order of June 13, 1975, of Judge Teitelbaum at Misc. No. 6259, our investigation indicates that the United States has supplied us with xerox copies of their file carbon copies of the progress reports submitted to Judge Teitelbaum on June 23, 1975 and June 27, 1975. The Clerk's file contains the original reports of June 17, 1975, and June 23, 1975. The Clerk's docket entry indicates that on February 16, 1977, the wiretap authorization, including the two progress reports, were unsealed and filed. The June 27, 1975 progress report, is not in the Clerk's file docket. Our investigation does not disclose the location of the original of this report at the present time, but the United States Attorney has produced a xerox copy of the carbon copy in the possession of the United States indicating that the third progress report was made and presumptively hand delivered to Judge Teitelbaum.

As to the wiretap order of July 23, 1975 of Judge Rosenberg at Misc. No. 6283, the original copies of these were delivered to the undersigned on April 12, 1977 by Judge Rosenberg who has kept them in his own files in an envelope sealed on August 14, 1975. They were opened by the undersigned and made part of the present case file.

The letters contained in the sealed envelope are the progress reports of the Special Attorney of the Department of Justice dated:

| (date of report) | (date of receipt stamp of Judge Rosenberg) |
|---|---|
| July 28, 1975 | July 28, 1975 |
| August 1, 1975 | August 1, 1975 4:55 P.M. |
| August 6, 1975 | August 6, 1975 3:02 P.M. |
| August 11, 1975 (advising of termination and sealing) | August 12, 1975 9:54 A.M. |
| August 12, 1975 (advising of report to Administrative Office of the United States Courts). | August 12, 1975 |

This attack is made under the provisions of 18 U.S.C. 2518(10)(a)(iii) which provides for suppression where "the interception was not made in conformity with the order of authorization or approval." 18 U.S.C. 2518(6) makes no provision for the formal filing or presentation of the progress reports made to the supervising judge. It does not even require that they be written. In fact it doesn't even require them, but leaves this to the discretion of the supervising judge. It is our opinion that the supervising judge may handle these reports as he deems proper under the circumstances since they are merely aids in the overall supervision of the electronic interception. The reports are not statutorily required and the supervising judge is the proper party to determine whether they comply with his order permitting the telephone surveillance. Their sufficiency is a matter of subject to the discretion of the supervising judge. As noted in *United States v. Acon*, 513 F.2d 513 [3d Cir. 1975], suppression is not required for every minor facial insufficiency under § 2518(10)(a)(ii). We find this rationale even more compelling under sub-section (iii) where the matter is discretionary with the supervising judge. However, since the basic contention of the defendants that no such reports were submitted is erroneous, we will dismiss the motions to suppress based on this ground.

### III.

The defendants have contended that the authorization for the use of the pen register in this case was not derived from 18 U.S.C. 2510 and, therefore, they constitute a "search" within the meaning of the Fourth Amendment, and must comply with the requirements of Rule 41(c)(1) of the Fed.R. of Cr.P. The defendants have cited cases in support of its argument which deal with the use of the pen register alone as an investigative tool. When a pen register is used together with an interception authorized by the court, the court order permitting the interception of the telephone communication is sufficient for the use of a pen register with such interception and no separate order for the pen register is necessary.

*United States v. Falcone*, 505 F.2d 478, 482 [3d Cir. .1974], *cert. den.*, 420 U.S. 955, 95 S.Ct. 1338, 43 L.Ed.2d 432 [1975].

We, therefore, find that the grounds advanced for the suppression of evidence secured by the wiretap and the pen register in this case are insufficient, and the motion will be accordingly denied.