**The PEOPLE of the State of Colorado, Plaintiff-Appellant,**

v.

**George Allen INGRAM, Diane Francis Brannon, Jan M. Full, Robert Ray Jones, and David Allan Montgomery, Defendants-Appellees.**

**The PEOPLE of the State of Colorado, Plaintiff-Appellant,**

v.

**Marvin Eugene WAHL, Defendant-Appellee.**

**Nos. 83SA153, 83SA443.**

Supreme Court of Colorado, En Banc.

July 2, 1984.

Rehearing Denied Aug. 13, 1984.

---

Paul Q. Beacom, James F. Smith, Dist. Attys., Robert S. Grant, Steven L. Bernard, Chief Trial Deputy Dist. Attys., Brighton, for the People.

No appearance for George Allen Ingram.

Robert P. Koehler, Denver, for Diane Francis Brannon.

Leonard M. Chesler, John S. Tatum, Denver, for Jan M. Full.

Jeralyn E. Merritt, Denver, for Robert Ray Jones.

Kathy P. Bonham, Denver, for David Allan Montgomery.

Walter L. Gerash, Gerash & Robinson, P.C., Denver, for Marvin Eugene Wahl.

DUBOFSKY, Justice.

In these consolidated appeals, the People challenge rulings of the Adams County District Court suppressing evidence of telephone calls intercepted by Aurora police officers under authority of a wiretap order issued to the Lakewood Department of Public Safety (LDPS). We reverse the district court rulings and remand these cases for further proceedings.

## I.

On May 14, 1982, the Adams County District Attorney applied to the district court for an *ex parte* order authorizing a wiretap on the telephone line of George Ingram and Marcella Hinshaw. The district attorney alleged that the results of an investigation by LDPS gave probable cause to believe that a wiretap would result in evidence of unlawful distribution, manufacturing, dispensing, sale, or possession of a schedule I or II controlled substance, offenses subject to prosecution as felonies under section 18–18–105, 8 C.R.S. (1983 Supp.). The district attorney requested that the United States Drug Enforcement Administration, the Colorado Bureau of Investigation, the Denver Police Department, and the Aurora Police Department be authorized to assist LDPS in its investigation.

On May 14, 1982, the district court issued an order permitting the interception of telephone calls on the Ingram/Hinshaw line. The order states that "the agency authorized to intercept such communications shall be the Intelligence Division of the Lakewood Department of Public Safety." The court did not specifically authorize any agency other than LDPS to intercept telephone calls. Under authority of the May 14 order, LDPS established a "listening post" in Aurora to monitor calls on the Ingram/Hinshaw line. Because LDPS did not have enough available officers to cover the listening post twenty-four hours a day, LDPS enlisted the aid of the Aurora Police Department in operating the listening post and intercepting calls. The monitoring team which intercepted calls included three LDPS officers and six Aurora police officers. Those officers reported either to LDPS agent Meyer or LDPS agent Keller. Meyer and Keller had daily supervisory responsibility over the operation,[1] and Mey-

---

1. The transcript of agent Meyer's testimony includes the following exchanges:
    Q. [by the People] "On a daily basis, who had supervisory responsibility for each of the individuals who manned the listening post?"
    A. [Meyer] "On a daily basis?"
    Q. "Yes."

   A. "Either myself or Agent Keller."
   and:
    Q. [by the defense] "Agent Meyer, you stated you were the supervisor of this entire operation. Is that correct?"
    A. [Meyer] "Yes, ma'am. Along with Agent Keller."

er testified that he could be reached at home when not at the listening post.

On May 25, 1982, based in part on information from the intercepted calls, investigating officers obtained a search warrant for a residence and garage located in Adams County. On May 26, 1982, the officers executed the warrant, seizing a laboratory used to manufacture methamphetamine. The wiretap order expired on June 14, 1982, and the next day, upon application of the district attorney, the district court issued an amended order authorizing joint participation of LDPS, the Aurora Police Department, and United States Drug Enforcement Agency officers in future monitoring of the Ingram/Hinshaw line. The LDPS and Aurora Police Department officers, however, ceased intercepting calls on June 9, 1982.

The incriminating phone conversations obtained through the Ingram/Hinshaw wiretap and the discovery of the methamphetamine laboratory through the Ingram/Hinshaw wiretap led on October 13, 1982 to indictments against the defendants, George Ingram, Diane Brannon, Jan Full, Robert Jones, David Montgomery, and fourteen other persons on charges of manufacturing, selling, distributing, possessing, or conspiring to manufacture, sell, distribute, or possess methamphetamines, dilaudid, percodan, heroin, and morphine, in violation of section 18–18–105, 8 C.R.S. (1983 Supp.).[2] On October 22, 1982, the district attorney charged another defendant, Marvin Wahl, by information.

At trial, the defendants moved to suppress all evidence attributable to telephone calls intercepted by Aurora police officers. In March, 1983, the district court granted the motions, holding that interceptions made by Aurora police officers violated the May 14, 1982 wiretap order because the order authorized only LDPS to intercept calls. The People appealed under section 16–15–102(11), 8 C.R.S. (1978), which authorizes the People to appeal an order suppressing wiretap evidence within thirty days of the issuance of the order.

## II.

Under 18 U.S.C. § 2516(2) (1982), Colorado may authorize investigatory agencies to intercept wire or oral communications pursuant to statutes which conform to minimum standards set out in 18 U.S.C. § 2518 (1982). Sections 16–15–101 to –104, 8 C.R.S. (1978 & 1983 Supp.), modeled after 18 U.S.C. § 2518, allow state and local investigative or law enforcement agencies to intercept wire or oral communications. Under section 16–15–102, a district court judge or supreme court justice, upon application of the attorney general or a district attorney, may issue an *ex parte* order authorizing a wiretap. Section 16–15–102 also provides the standards for issuance of wiretap orders and sets out grounds for suppression of wiretap evidence at trial. Section 16–15–102(10) states:

> Any aggrieved person in any trial ... may move to suppress the contents of any intercepted wire or oral communication or evidence derived therefrom, on the grounds that: ... the interception was not made in conformity with the order of authorization or approval.

Section 16–15–102(5)(d) requires that each order authorizing wiretapping or eavesdropping specify "[t]he identity of the agency authorized to intercept the communications...."

The question before us is whether, under section 16–15–102, the district court properly suppressed telephone conversations intercepted by Aurora police officers pursuant to a wiretap order which identified only LDPS as the agency authorized to make interceptions.[3] We conclude that the dis-

---

**2.** After briefs were filed in this case, defendants Jasmine McFall and Jeffrey Eitel were dismissed as parties to this appeal because they had agreed to disposition of charges.

**3.** The defendants raise additional issues involving the scope of the suppression order and the district court's denial of motions for severance.

Defendant Jones argues that because the suppressed evidence was considered by the grand jury which indicted him, the case against him must be dismissed. Section 16–15–102(11), 8 C.R.S. (1978), however, does not authorize defendants to obtain interlocutory review of district court rulings.

trict court erred in suppressing the evidence.

Based on section 16–15–102(5)(d) the defendants assert, and the district court held, that interceptions made by personnel of agencies not specifically identified by a wiretap order occur in violation of that order. The People argue that because the Aurora police officers who made interceptions in this case were under the supervision of LDPS, the wiretap order was not violated. Alternatively, the People assert that even if the order was violated, the violation was not serious enough to merit suppression of the evidence. We conclude that participation by the Aurora police officers under the circumstances of this case did not violate the wiretap order.

■ The requirements of section 16–15–102 are to be interpreted in a practical and commonsense fashion to effectuate their purpose. *See United States v. Abascal*, 564 F.2d 821 (9th Cir.1977) *cert. denied* 435 U.S. 942, 98 S.Ct. 1521, 55 L.Ed.2d 538 (1978); *United States v. Cacace*, 529 F.2d 1167 (5th Cir.) *cert. denied* 429 U.S. 841, 97 S.Ct. 115, 50 L.Ed.2d 109 (1976). Section 16–15–102(5)(d) (requiring that wiretap orders specify the agency authorized to intercept calls) is identical to 18 U.S.C. § 2518(4)(d). This language was enacted by the United States Congress "so that responsibility [for a wiretap] will be fixed." S.Rep. No. 1097, 90th Cong., 2d Sess., *reprinted in* 1968 U.S.Code Cong. & Ad. News 2112, 2192. A commonsense reading of section 16–15–102(5)(d)—in accord with congressional intent—is that the wiretap order must specify the agency responsible for execution of that order. There is no requirement that the order specify every cooperating agency which contributes personnel, provided those personnel are under the supervision and control of the authorized agency.

In *U.S. v. Lyons*, 507 F.Supp. 551 (D.Md. 1981), *aff'd* 695 F.2d 802 (4th Cir.1982), the court refused to suppress wiretap evidence gathered by District of Columbia police officers under an order authorizing the United States Drug Enforcement Administra-

tion to intercept calls. The *Lyons* court held that the District of Columbia officers were under the control and supervision of the federal officers. In *State v. Earle*, 444 So.2d 84 (Fla.Dist.Ct.App.) *cause dismissed* 449 So.2d 264 (Fla.1984), a Florida court reversed a ruling suppressing intercepted calls where wiretapping took place under the supervision of the authorized agency but some participating police officers were not designated by the wiretap order as authorized to intercept calls. *See also People v. Losinno*, 38 N.Y.2d 316, 379 N.Y.S.2d 777, 342 N.E.2d 556 (1975) (reversing a ruling suppressing evidence where the wiretap order directed the district attorney "or any other person or persons expressly designated by [him]" to intercept calls).

■ Here, there is no evidence that LDPS delegated or relinquished responsibility for execution of the wiretap order. All of the officers who intercepted calls on the Ingram/Hinshaw line were under direct supervision and control of LDPS. Supervising LDPS agents were available at all times to the officers operating the listening post. Moreover, the district attorney's application for the May 14 wiretap order informed the issuing judge that Aurora police officers would provide assistance. Because in these cases the agency authorized by the wiretap order was the agency which maintained full responsibility for, and control of, the execution of that order, we hold that the participation of the Aurora police officers did not violate the order. We therefore reverse the rulings of the district court and remand these cases for further proceedings consistent with this opinion.

Rulings reversed and cases remanded.

NEIGHBORS, J., dissents, and QUINN, J., joins in the dissent.

NEIGHBORS, Justice, dissenting:

I respectfully dissent. I agree with the majority that the threshold question in this case is whether the Aurora officers were legally and factually under the control and supervision of agents from the Intelligence

Division of the Lakewood Department of Public Safety (LDPS) while they were monitoring the wiretap. *See United States v. Lyons,* 507 F.Supp. 551 (D.Md.1981), *aff'd,* 695 F.2d 802 (4th Cir.1982); C. Fishman, *Wiretapping and Eavesdropping* sec. 47 (Supp.1983). However, I strongly disagree with the majority's characterization of the evidence and the application of the test to that evidence.

The proper analysis of the issue presented in this case begins with an examination of the pertinent statute. Section 16–15–102(5)(d), 8 C.R.S. (1973), states:

> (5) Each order authorizing or approving wiretapping or eavesdropping shall specify:
>
> . . . .
>
> (d) The identity of the agency authorized to intercept the communications, and of the person authorizing the application. . . .

The majority notes that the application submitted by the district attorney indicated that Aurora police officers would provide assistance. At 246. However, the wiretap order issued by the trial court is narrowly drawn and states in part: "That the agency authorized to intercept such communications shall be the Intelligence Division of the Lakewood Department of Public Safety. . . ." The order complies with the statute and limits the monitoring and interception of telephone calls not just to the Lakewood Department of Public Safety, but to the *Intelligence Division* of that law enforcement agency. Therefore, I conclude that the monitoring and interception by the Aurora officers clearly violated the wiretap order, unless there is a factual

basis to conclude that the Aurora officers were under the legal supervision and control of the LDPS.

The judge who issued the authorization for the monitoring and interception of communications was also the judge who heard the evidence on the motion to suppress. He found that his order had been violated. The evidence he considered included the testimony of Agent Meyer from the LDPS who stated that he and Agent Keller were "more or less" the case agents involved in the investigation and "more or less" supervised the wiretap operation. Agent Meyer also testified that the unnamed six to eight Aurora officers involved in the monitoring and interception of telephone calls "primarily" reported to him or Agent Keller.[1] The record is barren of the terms and conditions of any agreement or understanding between the Aurora Police Department and the LDPS as to the investigation. Nothing in the record suggests that, as a matter of fact or law, the Aurora officers were under the legal supervision and control of the LDPS. Yet, that is precisely what the court holds. The majority states that "[a]ll of the officers who intercepted calls on the Ingram/Hinshaw line were under direct supervision and control of LDPS." At 246. This conclusion represents ill-advised fact-finding by an appellate court. We have repeatedly held that we are bound by the trial court's findings of fact when they are supported by adequate evidence in the record. *See People v. Fish,* 660 P.2d 505, 509 (Colo.1983) (and cases cited therein).[2]

To the extent the majority relies on *Lyons,* 507 F.Supp. 551, to support its hold-

---

**1.** The record reflects the following testimony given by Agent Meyer in response to questions by the district attorney:

"Q  And in what capacity did you participate in that investigation?

"A  I was more or less the case agent along with Agent Keller reference this investigation.

. . . .

"Q  With specific reference to the listening post that was set up to monitor the telephone conversations on May 14, 1982, and through June 10, 1982, what were your assigned duties?

"A  My assigned duties, along with Agent Keller, were more or less to supervise the operation of that particular Title III.

. . . .

"Q  And to whom did each of those six to eight people report for their instructions and designation of duties?

"A  Primarily to myself or Agent Keller."

**2.** At the very least, this case should be remanded to the trial court to make further findings of fact and conclusions of law in light of the control and supervision standard adopted by the court.

ing that there was no violation of the trial court's wiretap order, that reliance is misplaced. In *Lyons*, the order for wiretapping specified that it was to be executed by special agents of the Drug Enforcement Administration (DEA). DEA agents are federal law enforcement officers, whereas most of the monitoring team members were Washington, D.C. Metropolitan Police Department officers, who had both been formally assigned to and were members of the DEA task force. The task force operated under the direct supervision of a special agent in charge of the DEA's Washington, D.C. field office. The defendants in *Lyons* argued that the interception of the telephone calls by the Washington police officers required suppression because (1) the conversations were unlawfully intercepted, and (2) monitoring by the D.C. officers violated the terms of the court order. The district court rejected both arguments, finding that the Metropolitan officers were legally and factually under the control of the named federal agents. Thus, the court concluded that the order had not been violated and found that: (1) The issuing judge was aware of the Metropolitan officers' participation in the investigation; (2) a contract existed between the DEA and Metropolitan officers which placed the Metropolitan officers under the supervision of the DEA and subjected the officers to the Federal Tort Claims Act; (3) the investigation was supervised by DEA officers; and (4) while Metropolitan officers monitored the conversations, DEA agents were also present at the listening post. *Id.* at 560–61.

The other two cases cited by the majority are not only distinguishable, but suggest a contrary result. In *State v. Earle*, 444 So.2d 84 (Fla.D.Ct.App.), *cause dismissed*, 449 So.2d 264 (Fla.1984), the wiretap orders authorized "[T]he State Attorney ... and her sworn Investigators thereof ..." to intercept wire communications. *Id.* at 85 n. 2. The trial court suppressed the evidence obtained through the wiretaps on the grounds that City of Miami police officers who applied for the order and participated in the interceptions were not properly authorized special investigators of the state

attorney because of what the appellate court characterized as "highly technical" defects in their bonds and oaths. The district court of appeals reversed. The appellate court held that even if the trial court's findings were correct, the issuing magistrate was aware of the Miami officers' participation in the wiretap and they were under the supervision of persons who were "duly constituted" state attorney's investigators. *Earle*, 444 So.2d at 85. In *People v. Losinno*, 38 N.Y.2d 316, 379 N.Y.S.2d 777, 342 N.E.2d 556 (N.Y.App.1975), the wiretap order issued by the trial court permitted the district attorney " 'or any other person or persons expressly designated by [him]' to conduct the wiretap." *Id.* The principle to be learned from *Lyons*, *Earle*, and *Losinno* is that either the evidence must establish legal control over officers executing the wiretap order by the agency to whom the warrant was directed or the wiretap order must authorize the named agency to designate persons to assist it in monitoring and intercepting wire communications. In this case, the judge who issued the order could have granted the LDPS authority to designate officers from the Aurora Police Department to assist them in executing the order. However, he did not do so.

The holding of the majority will have far-reaching adverse consequences. There is nothing in the court's opinion which prohibits personnel from the agency to whom a wiretap order is issued from enlisting the aid of any person to assist in executing the order. This is contrary to the congressional intent requiring specification of the agency to whom the order is issued so that responsibility for a wiretap will be fixed. At 246. Because of the intrusive nature of electronic surveillance, the strict construction of the statutory scheme which is required should not be diluted by the questionable application of agency law principles in the context of appellate review of a factual determination.

I would affirm the trial court's suppression ruling.

I am authorized to say that QUINN, J., joins me in the dissent.