The PEOPLE of the State of Colorado, Plaintiff-Appellant,

v.

Marvin Eugene WAHL, Defendant-Appellee.

The PEOPLE of the State of Colorado, Plaintiff-Appellant,

v.

George A. INGRAM, Robert Ray Jones, Michael A. Allison, Manuel E. Romero, David A. Montgomery, and Jan M. Full, Defendants-Appellees.

Nos. 84SA441, 84SA481.

Supreme Court of Colorado, En Banc.

March 31, 1986.

Rehearing Denied April 21, 1986.

---

James F. Smith, Dist. Atty., Steven L. Bernard, Chief Trial Deputy Atty., Brighton, for plaintiff-appellant.

Gerash, Robinson, Miller & Miranda, P.C., Christopher A. Miranda, Denver, for defendant-appellee, Marvin Eugene Wahl.

Jeralyn E. Merritt, Denver, for defendant-appellee, Robert Ray Jones.

Samuel R. Escamilla, Westminster, for defendant-appellee, Michael A. Allison.

Chris Melonakis, Northglenn, for defendant-appellee, Manuel E. Romero.

Bonham & Peake, Kathy P. Bonham, Denver, for defendant-appellee, David A. Montgomery.

The Law Firm of Leonard M. Chesler, John S. Tatum, Denver, for defendant-appellee, Jan Full.

No appearance for defendant-appellee, George A. Ingram.

ERICKSON, Justice.

This is the second time that we have been called upon to review suppression orders entered by the Adams County District Court in this case. The defendants are variously charged with manufacturing, selling, and distributing methamphetamine and conspiring to manufacture, sell, distribute, or possess methamphetamine or other controlled substances in violation of section 18–18–105, 8 C.R.S. (1985 Supp.). After the charges were filed, the district court granted the defendants' motions to suppress evidence obtained by police officers during a wiretapping operation. In *People v. Ingram*, 684 P.2d 243 (Colo.1984), we reversed and remanded for further proceedings. On remand, the defendants filed additional motions to suppress based upon *People v. Sporleder*, 666 P.2d 135 (Colo. 1983). Following a hearing, the district court again ordered the suppression of the wiretap evidence, and the district attorney appealed. We now reverse and remand to the district court for further proceedings consistent with this opinion.

## I.

On May 14, 1982, the Adams County District Attorney filed an application in the district court for an *ex parte* order authorizing the Lakewood Department of Public Safety to install a wiretap on the telephone line of a house in Aurora, Colorado. The district attorney alleged that there was probable cause to believe that evidence concerning the unlawful manufacture and sale of controlled substances would be obtained by the wiretap. The telephone communications that investigating law enforcement officers sought to intercept were those of the subscribers to the telephone line, George Ingram and Marcella Hinshaw, and other persons suspected of involvement in the drug violations. The application for a wiretap order was supported by lengthy, comprehensive, and factual affidavits executed by two Lakewood police officers. One of the affidavits specified that a pen register would be installed on the telephone

line along with the wiretap. The application and affidavits were accompanied by a proposed wiretap order for the district court's approval and adoption. The order permitted a wiretap on the Ingram/Hinshaw telephone line for thirty days but did not specify that a pen register would be used in the wiretapping operation.

The district court signed the wiretap order on the day that it was submitted, May 14. A wiretap and pen register were installed on the line the same day and police officers monitored calls from that time until June 9. The conversations of many incoming and outgoing calls were recorded by the wiretap, while the pen register revealed the telephone numbers dialed on the Ingram/Hinshaw telephone. On May 25, relying in part on information acquired through the wiretap, police officers sought and obtained a search warrant for a residence and garage located in Adams County. The officers executed the warrant the following day and seized equipment and material in a laboratory that was used to manufacture methamphetamine.

The telephone conversations recorded by the wiretap and the discovery of the methamphetamine laboratory formed the basis for indictments in October 1982 against all of the defendants except Marvin Wahl.[1] The defendants were variously charged with unlawfully manufacturing, selling, and distributing methamphetamine and conspiring to manufacture, sell, distribute, or possess methamphetamine, dilaudid, percodan, heroin, morphine, P2P, or methaqualone. § 18–18–105, 8 C.R.S. (1985 Supp.).

The defendants filed motions to suppress all evidence derived from the use of the wiretap. The district court found that there was probable cause to support the issuance of the wiretap order. However, the court granted the motions to suppress on the ground that the participation of officers who were not members of the Lakewood Department of Public Safety in monitoring calls on the Ingram/Hinshaw line

---

**1.** Wahl was subsequently charged by information.

violated the wiretapping order. The prosecution appealed, and we reversed. *People v. Ingram,* 684 P.2d at 243. Our review in *Ingram* was limited to the issue of whether the wiretap order was violated when personnel not identified in the order participated in the wiretapping. We held that the Lakewood Department of Public Safety did not violate the terms of the wiretap order. We therefore reversed the suppression orders and remanded the case for further proceedings.

■ On remand the defendants filed additional motions to suppress on the ground that the use of a pen register without a search warrant violated Article II, section 7 of the Colorado Constitution, as interpreted in *People v. Sporleder,* 666 P.2d at 135. The district court granted the motions after finding that the wiretap order did not specifically authorize the use of a pen register. The court concluded that without specific authorization *Sporleder* prohibited use of a pen register without a search warrant. The prosecution has again appealed the district court's suppression orders under section 16–15–102(11), 8 C.R.S. (1978).[2]

## II.

The prosecution first contends that a valid wiretap order includes authorization for the use of a pen register, even when the order does not specify that a pen register will be used. Second, the prosecution asserts that the only defendant who has standing to challenge the use of the pen register in this case is the subscriber of the telephone line, George Ingram.[3] As a third ground for reversal, the prosecution argues that, assuming the pen register was illegally placed on the Ingram/Hinshaw line, the trial court should have suppressed only the information obtained by the pen register, not the contents of conversations recorded by the wiretap. We conclude that the installation of the pen register under the circumstances of this case did not violate the defendants' constitutional rights. Therefore, we do not address the prosecution's second and third contentions. In the discussion below, we first consider whether the use of pen registers is governed by Colorado's wiretapping statute, sections 16–15–101 to –104, 8 C.R.S. (1978 & 1985 Supp.). We then consider whether the wiretap order permitting surveillance of the Ingram/Hinshaw line was sufficient to authorize the installation of a pen register.

## A.

A pen register is a mechanical device that records the numbers dialed on a telephone by monitoring the electrical impulses caused when the dial on the telephone is released. *United States v. New York Telephone Co.,* 434 U.S. 159, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977); *People v. Sporleder,* 666 P.2d at 135. A pen register records the date and time of the calls but does not monitor or record the contents of conversations. It does not indicate whether calls

---

2. The defendants contend that this case is not properly before us under section 16–15–102(11). We reject their contentions. Section 16–15–102(11) provides in pertinent part:

In addition to any other right to appeal, the state of Colorado has the right to appeal from an order granting a motion to suppress made under subsection (10) of this section. . . .

Section 16–15–102(10) provides in part:

Any aggrieved person in any trial . . . may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom, on the grounds that: *The communication was unlawfully intercepted; the order of authorization or approval under which it was intercepted was insufficient on its face. . . .*

(Emphasis added). The defendants moved to suppress the contents of the intercepted conversations on the ground that the use of a pen register without a search warrant violated Article II, section 7 of the Colorado Constitution. We have no difficulty in concluding that the defendants' motions in effect alleged that the conversations were "unlawfully intercepted" within the meaning of section 16–15–102(10). Furthermore, the defendants asserted that use of the pen register was not authorized by the wiretap order. The essence of these allegations was that the wiretap order was "insufficient on its face." Thus, the grounds of the defendants' motions are contained in section 16–15–102(10), and jurisdiction is therefore appropriate under section 16–15–102(11).

3. Marcella Hinshaw is not a party to this appeal.

are actually completed and cannot determine the telephone numbers from which incoming calls were made.

■ By contrast, a wiretap records the contents of telephone communications. It also records the sound of electrical impulses created when a number is dialed on the monitored line. Expert analysis of the recorded sound can reveal the dialed numbers. A pen register, when used in conjunction with a wiretap, eliminates the need for analysis of the sound. The pen register is thus a technological refinement which merely expedites the determination of information already accessible to investigating officers by means of the wiretap. *United States v. Kail*, 612 F.2d 443 (9th Cir.1979), *cert. denied*, 446 U.S. 912, 100 S.Ct. 1842, 64 L.Ed.2d 266 (1980); *United States v. Falcone*, 505 F.2d 478 (3d Cir. 1974), *cert. denied*, 420 U.S. 955, 95 S.Ct. 1338, 43 L.Ed.2d 432 (1975).

■ Wiretapping is subject to pervasive federal and state regulation. *See* 18 U.S.C. §§ 2510–2520 (1970 & 1985 Supp.); §§ 16–15–101 to –104, 8 C.R.S. (1978 & 1985 Supp.). Section 16–15–102(1)(a) provides that an *ex parte* order for wiretapping may be issued upon application by the attorney general or a district attorney, who establishes by affidavit that evidence will be obtained of a crime specified in section 16–15–102(1)(a). Detailed requirements for the application are set forth in section 16–15–102(2). The supporting affidavit serves the same function as an affidavit used to establish probable cause for a search warrant. *People v. Corr*, 682 P.2d 20 (Colo.), *cert. denied*, —— U.S. ——, 105 S.Ct. 181, 83 L.Ed.2d 115 (1984). *See* § 16–3–303, –304, 8 C.R.S. (1978); Crim.P. 41. The district court may enter an *ex parte* order authorizing wiretapping if it determines that there is probable cause to support the order. § 16–15–102(4).[4] The order must be specific as to the identity of the person whose communications are to be intercepted; the nature and location of the line to be monitored; the type of communication sought to be intercepted and the particular offense to which it relates; the agency authorized to intercept the communications; and the period of time during which interceptions are authorized. § 16–15–102(5).

In *United States v. New York Telephone Co.*, 434 U.S. at 159, 98 S.Ct. at 364, the Supreme Court held that the use of pen registers is not subject to the restrictions of the federal wiretapping statute. The Court reasoned that the wiretapping statute is concerned only with the "interception" of the "contents" of communications, as those terms are defined in 18 U.S.C. §§ 2510(4) and (8).[5] Pen registers, the Court stated, do not "intercept" because they do not acquire the "contents" of communications. A pen register discloses only the telephone numbers that have been dialed on the monitored line. The Court noted that its conclusion was supported by

---

4. Section 16–15–102(4) requires that the district court make a number of findings as to probable cause before authorizing a wiretap. The court must determine that:

   (a) There is probable cause for belief that a person is committing, has committed, or is about to commit a particular offense enumerated in this section;

   (b) There is probable cause for belief that particular communications concerning that offense will be obtained through the interception;

   (c) Normal investigative procedures have been tried and have failed, or reasonably appear to be unlikely to succeed if tried, or to be too dangerous;

   (d) There is probable cause for belief that the facilities from which or the place where the wire or oral communications are to be intercepted are being used, or are about to be used, in connection with the commission of an offense, or are leased to, listed in the name of, or commonly used by the person alleged to be involved in the commission of the offense. § 16–15–102(4).

5. "Intercept" is defined as "the aural acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). " 'Contents' ... includes any information concerning the identity of the parties to [the] communication or the existence, substance, purport, or meaning of [the] communication." 18 U.S.C. § 2510(8).

the legislative history of the wiretapping statute.[6]

Colorado's statute governing electronic surveillance is closely patterned after and designed to implement the policies of the federal act. Federal authorities explaining the federal act should thus be accorded great weight in interpreting the Colorado statute. The definitions of "intercept" and "contents" contained in the Colorado statute are identical to those in the federal act. *Compare* 18 U.S.C. § 2510(4), (8) *with* § 16–15–101(3), (5), 8 C.R.S. (1978). We have no reason on this issue to construe our statute in a manner contrary to the Supreme Court's interpretation of the federal act in *United States v. New York Telephone Co.*, 434 U.S. at 159, 98 S.Ct. at 364. Therefore, we hold that the use of pen registers is not governed by the wiretapping statute. Consequently, no separate order authorizing the installation of a pen register on the Ingram/Hinshaw line was required under the wiretapping statute.

### B.

We are still left with the question of whether the wiretap order issued in this case was sufficient to authorize the installation of a pen register in addition to the wiretap. In *People v. Sporleder*, 666 P.2d at 135, we held that in the absence of exigent circumstances or consent, police officers may not install a pen register without first obtaining a warrant supported by probable cause. The prosecution contends that the warrant requirement announced in *Sporleder* was satisfied when the prosecution established probable cause to support the issuance of the wiretap order. We agree.

The rationale underlying our decision in *Sporleder* was that an individual has a reasonable expectation of privacy in the numbers dialed on his telephone. We said that the information obtained by a pen register "can often yield inferential knowledge of the content of the conversation itself." 666 P.2d at 142. We also observed that a pen register record may be used by police officers to construct "a virtual mosaic of a person's life." *Id.* We therefore concluded that a search warrant supported by probable cause should precede the use of a pen register in order to guard against an unreasonable invasion of privacy.

The concerns we expressed in *Sporleder* were obviated in this case by the issuance of a valid wiretap order. The wiretap order authorized a far greater intrusion into the defendants' privacy than a warrant for the use of a pen register would have permitted.[7] Not only were investigating officers allowed to listen to the telephone conversations occurring on the Ingram/Hinshaw line, they could also have employed an expert to analyze the sound produced by the dialing of numbers on the line. As we have noted, such a procedure would have enabled the officers to obtain the same information they acquired by use of the pen register. Expert analysis of the sound would not have violated the wiretap order, and no warrant would have been necessary to authorize the analysis.

Furthermore, it is undisputed that the application and order for a wiretap complied with the requirements of the wiretapping statute. Significantly, the trial court's finding of probable cause has not been contested. In our view, the finding of probable cause as to the wiretap order was sufficient to support the same finding as to

---

**6.** The court said:

The Senate Report explained that the definition of "intercept" was designed to exclude pen registers:

Paragraph 4 [of § 2510] defines "intercept" to include the aural acquisition of the contents of any wire or oral communication by any electronic, mechanical, or other device. Other forms of surveillance are not within the proposed legislation.... The proposed legislation is not designed to prevent the tracing of

phone calls. The use of a "pen register," for example, would be permissible.

*United States v. New York Telephone Co.*, 434 U.S. at 167, 98 S.Ct. at 369, (quoting S.Rep.No. 1097, 90th Cong., 2d Sess. 90 (1968)).

**7.** By contrast, in *Sporleder* a wiretap order was not obtained as an incident of the investigation, and there was no other court authorization for the use of the pen register.

the pen register. *See United States v. Kail,* 612 F.2d at 448 ("If, as defendants argue, the Government must support the use of the pen register by a showing of probable cause that showing is met by satisfying the probable cause requirements for obtaining the wiretap.").

We conclude that the extensive protections contained in the wiretapping statute, which governed the electronic surveillance in this case, were more than adequate to satisfy the warrant requirement of *Sporleder.* A number of other courts, faced with the issue we have addressed, have agreed that the issuance of a valid wiretap order includes authorization for the use of a pen register. *United States v. Kail,* 612 F.2d at 443; *United States v. Cox,* 567 F.2d 930 (10th Cir.1977), *cert. denied,* 435 U.S. 927, 98 S.Ct. 1496, 55 L.Ed.2d 522 (1978); *United States v. Falcone,* 505 F.2d at 478; *United States v. DePalma,* 461 F.Supp. 800 (D.C.N.Y.1978); *United States v. Ianelli,* 430 F.Supp. 151 (W.D.Pa.1977); *Commonwealth v. Vitello,* 367 Mass. 224, 327 N.E.2d 819 (1975).

Accordingly, the suppression orders entered by the trial court are reversed, and the case is remanded for further proceedings consistent with this opinion.

QUINN, C.J., specially concurs.

QUINN, Chief Justice, specially concurring:

I specially concur in the result. When this case was originally before the court in *People v. Ingram,* 684 P.2d 243 (Colo.1984), I joined the dissenting opinion of Justice Neighbors on the basis that the monitoring and interception of the telephone communications by the Aurora police officers was in violation of the wiretap order because: (1) the wiretap order expressly limited the monitoring and interception to the Intelligence Division of the Lakewood Department of Public Safety; and (2) the evidence at the suppression hearing supported the district court's determination that the Aurora police officers, in intercepting and monitoring the telephone calls, were not acting under the supervision and control of the Intelligence Division of the Lakewood Department of Public Safety and thus were in violation of the wiretap order. A majority of this court, however, upheld the validity of the wiretap order, and that decision is controlling here. Given this court's prior opinion in this case, I concur in the majority's determination that the scope of the intrusion authorized by a wiretap included the use of a pen register to record the date and time of outgoing calls made from the wiretapped telephone line.