2               United States Court of Appeals,

                      Fifth Circuit.

                      No. 94-10786.

        Joe Frank WASHINGTON, Plaintiff-Appellant,

                           v.

RESOLUTION TRUST CORPORATION, as Receiver of Independent American
Savings Assoc., etc., et al., Defendants,

Resolution Trust Corporation, as Receiver of Independent American
Savings Assoc., etc., Defendant-Appellee.

                      Nov. 10, 1995.

Appeal from the United States District Court for the Northern
District of Texas.

Before HIGGINBOTHAM and PARKER, Circuit Judges, and TRIMBLE[1],
District Judge.

        ROBERT M. PARKER, Circuit Judge:

        Appellant Joe Washington ("Washington") appeals the summary

judgment dismissal of his state law negligence action against the

Resolution Trust Corporation ("RTC").  Washington argues that the

district court misapplied Texas negligence law to the summary

judgment evidence and abused its discretion in not allowing him to

supplement the record after judgment.  Because we find that the

district court erred in its analysis of Texas negligence law, and

because Washington did not have adequate notice of that portion of

the summary judgment entered *sua sponte,* we reverse the summary

judgment and remand for further proceedings.

                          FACTS

---

        [1]District Judge of the Western District of Louisiana,
sitting by designation.

Washington was an employee at NuLook Dry Cleaners ("NuLook"), located at the Bruton Masters Retail Center ("Retail Center"), a strip shopping center in Dallas, Texas. The store fronted on a common area and parking lot owned and controlled by the Retail Center. John Kapdia, NuLook's owner, privately leased the area inside NuLook. In the late afternoon of May 14, 1992, three men entered NuLook as part of a robbery. During the crime, Washington was shot in the head.

Washington filed suit in state court against Kapdia, P. O'B. Montgomery & Company, the property management company, and Independent American Savings Association ("IASA"), the one-time owner of the Retail Center. He claimed that IASA should be liable because they had not provided adequate security. As IASA had failed, however, its assets at the time of suit were held by the RTC. The RTC removed the case to federal court and sought summary judgment on the ground that it owed no duty to protect Washington from third-party intentional torts occurring within NuLook's premises.

Washington settled or dismissed his claims against Kapdia and the management company. The district court then granted summary judgment for RTC against Washington because it concluded that Washington had not shown that the Retail Center attracted or provided a climate for crime, a showing which, according to the district court's analysis, was necessary to prove that the RTC owed a duty of care under a premises liability theory. The district court also found that Washington had not submitted sufficient

2

evidence to establish a fact question on breach or proximate cause. Washington then moved to supplement the record and have the district court reconsider its judgment. This motion was denied.

RTC'S DUTY TO WASHINGTON UNDER TEXAS LAW

a. Standard of review

We review a grant of summary judgment *de novo,* applying the same standard as the district court. *Hanks v. Transcontinental Gas Pipe Line Corp.,* 953 F.2d 996, 997 (5th Cir.1992). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c).

We begin our determination by consulting the applicable Texas substantive law to determine what facts and issues are material. *See United States v. Muniz,* 374 U.S. 150, 153, 83 S.Ct. 1850, 1853, 10 L.Ed.2d 805 (1963) (holding that substantive state law applies in civil actions against the United States under Federal Torts Claims Act); *see also* 28 U.S.C. § 1346(b) (1993) (Federal Torts Claims Act). We then review the evidence relating to those issues, viewing the facts and inferences in the light most favorable to the non-movant. *Transcontinental Gas Pipe Line Corp.,* 953 F.2d at 997. If the non-movant sets forth specific facts in support of each allegation essential to his claim, a genuine issue is presented. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

b. Washington's relationship to RTC

No Texas court has decided whether a duty exists in this unique fact situation. We are therefore charged with making an *Erie*[2] prediction concerning what the Texas courts would do if they were faced with the question before us.

As a preliminary matter, we must determine Washington's relationship to the RTC at the time of the shooting. The district court held, and the parties do not dispute, that Washington was a business invitee. An invitee is one who enters onto another's land with the owner's knowledge and for the mutual benefit of both parties. *Rosas v. Buddies Food Store,* 518 S.W.2d 534, 536 (Tex.1975); *Ronk v. Parking Concepts of Tex., Inc.,* 711 S.W.2d 409, 411 (Tex.Civ.App.—Ft. Worth 1986, writ ref'd n.r.e.). RTC knew that NuLook would have someone in charge of the dry cleaning operations. Washington, as an employee of NuLook who benefitted NuLook and in turn benefitted RTC, was a business invitee under Texas law, according to the district court's analysis. It is well settled Texas law that an occupier of land owes a duty of ordinary care to make and keep the premises safe for his invitees. *Atchison, Topeka and Santa Fe Railroad Co. v. Smith,* 563 S.W.2d 660 (Tex.Civ.App.—Waco 1978, writ ref'd n.r.e.).

However, regardless of whether Washington was a business invitee, he enjoyed a landlord-tenant relationship with RTC. A landlord is generally not liable to a tenant for injuries caused by

---

[2]*Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

4

an unsafe condition, which can include the unreasonable risk of harm from criminal intrusions, unless the landlord was aware of the condition at the time the premises were let. *Exxon Corp. v. Tidwell,* 867 S.W.2d 19, 21 (Tex.1993). But when the landlord retains some possession or control over a portion of the premises, it is charged with the duty of ordinary care to the tenant and its employees in maintaining the portion retained. *Id.* In such a situation the duties owed by the landlord to an employee of the tenant are the same as those owed by the landlord to the tenant. *Id., citing Flynn v. Pan Am. Hotel Co.,* 143 Tex. 219, 183 S.W.2d 446, 449 (1944). Because the duty of ordinary care owed to an invitee is the same under Texas law as that owed to a tenant in so far as it pertains to the common area controlled by the landlord, we cannot say that the district court erred in applying invitee law to Washington's claims.

c. The nature of the duty owed

Generally, a landowner has no duty to prevent criminal acts of third parties who are not under the landowner's supervision or control. *See El Chico Corp. v. Poole,* 732 S.W.2d 306, 313 (Tex.1987). A landowner does, however, have a duty to protect invitees on the premises from criminal acts of third parties if the landowner knows or has reason to know of an unreasonable risk of harm to the invitee. *Exxon Corp. v. Tidwell,* 867 S.W.2d 19 (Tex.1993). This duty developed out of the premise that the party with the "power of control or expulsion" is in the best position to protect against the harm, and when that party, by reason of

5

location, observation or past experience, should reasonably anticipate criminal conduct on the part of third persons, that party has a duty to take precautions against it. *Id.* at 21. In this context, Texas courts weigh risk, foreseeability, and likelihood of injury against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury and the consequences of placing that burden on the defendant. *Otis Eng'g Corp. v. Clark,* 668 S.W.2d 307, 309 (Tex.1983). Among the *Otis Eng'g* factors, foreseeability has long been considered the most significant. *Corbin v. Safeway Stores, Inc.,* 648 S.W.2d 292 (Tex.1983). While the existence of a duty is a question of law for the court to decide, if foreseeability requires resolution of disputed facts or inferences, these questions are inappropriate for legal resolution. *Kendrick v. Allright Parking,* 846 S.W.2d 453, 458 (Tex.App.—San Antonio 1992, writ denied).

There was evidence that this tenant alone had ten prior robberies and RTC had in fact taken precautions against such incidents by hiring part time security guards. If the fact finder concludes that RTC had recognized the danger and responded to it, the factual basis of foreseeability must be resolved against RTC.

In premises liability cases, control is also a central factor in deciding the question of duty. When an employee attempts to hold someone with contractual ties to both the land and his employer liable for negligence in failing to prevent harm inflicted by a third party which would not have occurred but for the operation of the business, we must examine whether the defendant

6

had the right of control over the security defects which allegedly led to the injury. *Brooks v. National Convenience Stores, Inc.,* 897 S.W.2d 898, 903 (Tex.App.—San Antonio 1995, n.w.h.), *citing Exxon Corp. v. Tidwell,* 867 S.W.2d 19 (Tex.1993). Texas courts look to the written agreement governing the relationship between the landowner and the lessee, as well as any evidence of actual exercise of control by either party. *Tidwell,* 867 S.W.2d at 22. It is undisputed in the record on appeal that RTC exercised actual control over the safety and security of common area. While the bedrock issue is right of control, evidence of actual control is relevant insofar as it shows a right of control not manifested by the agreements between the parties, or even in derogation of the written agreements. *Id.* at 21 n. 3 and 22.

The district court relied on *Castillo v. Sears, Roebuck & Co.,* 663 S.W.2d 60 (Tex.Civ.App.—San Antonio 1983, writ ref'd n.r.e.), a twelve year old intermediate appellate court opinion, which states:

> There is no duty upon the owners or operators of a shopping center, individually or collectively, or upon merchants and shopkeepers generally, whose mode of operation of their premises does not attract or provide a climate for crime, to guard against the criminal acts of a third party, unless they know or have reason to know that acts are occurring or are about to occur on the premises that pose imminent probability of harm to an invitee; whereupon a duty of reasonable care to protect against such act arises.

*Id.* at 66. Based on this articulation of the Texas law of duty, the district court concluded that Washington's summary judgment evidence failed because it did not raise a genuine issue of material fact concerning whether RTC's operation of the Retail

7

Center "attracted or provided a climate for crime" or that RTC knew or had reason to know that "criminal acts were occurring or were about to occur that posed imminent probability of harm to an invitee." The district court's ruling is in error.

The common law of torts, including the concept of duty, evolves in light of the changing conditions and circumstances of society. *El Chico Corp.,* 732 S.W.2d at 310-11. Texas courts now recognize that violent crime has become a significant and pervasive social problem and have imposed a duty to take affirmative action to control or avoid increasing the danger from another's conduct that the actor has at least partially created.[3] *Berly v. D & L Sec. Serv. & Investigation, Inc.,* 876 S.W.2d 179, 188 (Tex.App.—Dallas 1994, writ denied). This is a broader duty than the *Castillo* court recognized in 1983. However, it is at least arguable that the facts of this case may meet the *Castillo* test as well.

The record on appeal contains evidence that the lease was silent regarding who was responsible for providing security in the parking lot/common area, but that RTC had assumed that responsibility by hiring an off duty police officer a few hours a week. There is also evidence that NuLook had been robbed ten times

---

[3]The question of whether RTC "at least partially created" the danger that resulted in Washington's injury by negligently failing to adequately provide for safety and security of the area is a problem of causation rather than duty. In the event this case survives for trial, Washington must prove that any such negligence was causally connected to his injuries and damages. Causation is not before us. Consequently, we do not reach that question.

prior to Washington's injury and that the budget devoted to security had more than tripled between 1989 and 1992. Further, it is undisputed that the person who shot Washington gained access to NuLook from the common area. Based on this evidence, we find that Washington created a genuine issue of material fact concerning both foreseeability and control. A rational fact finder could conclude that the history of repeated robberies in NuLook committed by individuals who gained access to NuLook's leased premises from the common area, combined with a rapidly growing budget devoted to providing premises security over this same time period established that a crime problem at the Retail Center directly affecting NuLook was foreseeable. A rational fact finder could further conclude that by setting the security budget and deciding the type and amount of security to provide, the RTC controlled the center's safety and security response to that problem. We therefore hold that the district court's grant of summary judgment for RTC on the question of duty was error.

## BREACH AND CAUSATION

The district court went on to hold that even assuming that RTC had a duty to provide security, Washington failed to submit evidence that raised a fact issue as to breach or causation. Washington moved to supplement the record and to have the district court reconsider the summary judgment. Because RTC's motion for summary judgment was based on the issue of duty, Washington argued that he did not have notice that the district court would reach the questions of breach and causation, and for that reason did not

submit summary judgment evidence on those questions.  RTC opposed the motion, taking the position that the district court's ruling on duty mooted Washington's claims on breach and causation, and the district court denied the motion without a discussion of its reasons.  On appeal, Washington contends that the district court erred in denying him the opportunity to supplement his summary judgment record prior to ruling on breach and causation.  We agree.

District courts can enter summary judgment *sua sponte,* so long as the losing party has ten days notice to come forward with all of its evidence. *Judwin Properties, Inc. v. United States Fire Ins. Co.,* 973 F.2d 432, 436-37 (5th Cir.1992).  The record on appeal supports Washington's contention that he did not have notice as required by Rule 56 of the Federal Rules of Civil Procedure.  We review such failure for harmless error. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 28 F.3d 1388, 1398 (5th Cir1994).  In this case, we cannot say that the lack of notice was harmless.  The focus of the motion for summary judgment and the district court's order was the issue of duty.  When Washington moved to submit more evidence, the RTC's response again focused on the fact that without a finding of duty, breach and causation were moot.  Breach and causation, far from being moot, may be the central controlling issues of Washington's claim.  The evidence should be fully developed on summary judgment or at trial before the court is called upon to decide them.  RTC contends that it had no duty to Washington because he was not within the common area controlled by RTC at the time of the shooting.  Clearly RTC

10

had no duty to provide security inside NuLook.  However, rather than duty, Washington's location inside NuLook creates a problem of establishing a causal connection between any breach of duty on the part of RTC to adequately provide for the safety and security of the common area and the criminal activity occurring within NuLook.

To summarize, Washington must prove that RTC breached its duty to him as an employee of a tenant (NuLook) by negligently failing to provide adequate security in the common area and that such failure was a proximate cause of his injuries and damages.

CONCLUSION

For the foregoing reason we REVERSE the summary judgment granted by the district court to RTC, and REMAND for further proceedings consistent with this opinion.