The PEOPLE of the State of Colorado,
Plaintiff–Appellant

v.

Ignacio Byron GALLEGOS,
Defendant–Appellee.

The People of the State of Colorado,
Plaintiff–Appellant

v.

Fernando Lopez, Defendant–Appellee.

The People of the State of Colorado,
Plaintiff–Appellant

v.

Josiah Angelo Gallegos, Defendant–
Appellee.

The People of the State of Colorado,
Plaintiff–Appellant

v.

Demetrius Clyde Santistevan,
Defendant–Appellee.

The People of the State of Colorado,
Plaintiff–Appellant

v.

Jorge Perez, Defendant–Appellee.

Nos. 10SA186, 10SA187, 10SA188,
10SA189, 10SA190.

Supreme Court of Colorado,
En Banc.

April 11, 2011.

Daniel H. May, District Attorney, Fourth Judicial District, Terry Sample, Deputy District Attorney, Deborah F. Pearson, Deputy District Attorney, Colorado Springs, Colorado, Attorneys for Plaintiff–Appellant.

Davide C. Migliaccio, Colorado Springs, Colorado, Attorney for Defendant–Appellees Ignacio Gallegos, Fernando Lopez, Josiah Gallegos, and Demetrius Santistevan.

Barker & Tolini, P.C., Joshua Tolini, Jeff J. Barker, Colorado Springs, Colorado, Attorneys for Defendant–Appellee Jorge Perez.

Justice MARTINEZ delivered the Opinion of the Court.

In this case, we consolidate five separate interlocutory appeals by the People. All of the defendants were allegedly part of the same conspiracy to distribute illegal narcotics, and their arrests resulted from the same set of wiretap orders. The five defendants then joined in a Motion to Suppress Evidence Derived from Illegal Wiretaps, which was subsequently granted by the trial court. Because the appeal concerns the same trial court order granting the motion to suppress as well as the same set of wiretap orders, applications, and affidavits, the facts giving rise to the appeal are identical for all five defendants. Each appeal concerns whether evidence obtained from a series of wiretap orders should have been suppressed due to alleged violations of the wiretap statute and the neutral and detached magistrate requirement of the Fourth Amendment. We hold that the judge who issued the wiretap orders properly acted as a neutral and detached magistrate and that the violations of the wiretap statute were not sufficient to warrant suppression. Therefore, we reverse the decision of the trial court.

## I.

The five defendants in this case were all arrested on various drug-related charges as part of a conspiracy to sell illegal narcotics. Law enforcement gathered information on the defendants through the use of wiretap surveillance. The orders authorizing the use of wiretap surveillance were signed by Chief Judge Samelson, the Chief District Court Judge in the Fourth Judicial District. Between February 2009 and September 2009, Chief Judge Samelson's son, Mike Samelson, was employed as a deputy district attorney in the County Court Division of the Fourth Judicial District Attorney's Office, but had no involvement in the instant case. At the start of his son's employment, Chief Judge Samelson transferred administrative supervision of the County Court to another judge. Additionally, in response to a motion to recuse, Chief Judge Samelson recused himself from an unrelated homicide case due to the "appearance of a potential conflict."[1] The wiretap orders at issue were signed during the period that Mike Samelson was employed by the District Attorney's Office.

Because Chief Judge Samelson issued the wiretap orders while his son worked for the District Attorney's Office, defendant Jorge Perez filed a Motion to Suppress Evidence Derived from Illegal Wiretaps, and the other codefendants adopted and joined in the Motion. On May 27, 2010, the trial court issued an order granting the Motion to Suppress and the People then filed this interlocutory appeal.

In the Order granting the Motion to Suppress, the trial court ruled that the wiretap orders were invalid on the basis that they were not issued by a neutral and detached magistrate. After asserting that Chief Judge Samelson had already disqualified himself from all criminal cases based on his son's employment, the trial court decided that he could not have provided valid authorization for the wiretaps, and therefore, the orders were void. When asked to overlook the disqualification issue and examine the four corners of the application, the trial court declined to do so, finding that it "would in essence nullify the need for disqualification in any case."[2]

---

1. While the transfer and recusal are clearly supported in the record, there is also unsubstantiated evidence suggesting that Chief Judge Samelson may have removed himself from all criminal cases. During a motions hearing on April 22, 2010, Judge Grohs alludes to the fact that it was decided among the District Court Judges that "Judge Samelson would no longer do a criminal docket because it was a conflict of him hearing criminal cases." During another motions hearing on May 5, Judge Grohs speculates, however, that Chief Judge Samelson was still issuing warrants and doing phone duty, because she had not heard that he had removed himself from issuing

warrants. Regardless, the evidence here seems to suggest that Chief Judge Samelson made an administrative reassignment of cases rather than a determination that he was disqualified from hearing certain cases. Even if he did disqualify himself, there is no evidence in the record to support the conclusion that he had disqualified himself from issuing the wiretap orders in this case.

2. Later, in its Order denying the People's Motion for Reconsideration, however, the trial court clarified that it did in fact look to the four corners of the application, and it was during that

In addition to the disqualification issue, the trial court found a number of violations of the wiretap statute and the wiretap orders. The trial court thus ruled that the wiretap evidence was inadmissible against any of the defendants because it was obtained in violation of section 16–15–102, C.R.S. (2010), "coupled with the fact that the judge issuing the orders and monitoring compliance with the orders had already disqualified himself from hearing matters involving the district attorney's office." As a result, the trial court suppressed all of the evidence from the wiretaps. The People filed an interlocutory appeal for each of the five defendants in order to challenge the suppression.

## II. Analysis

### 1. Standard of Review

A warrant authorizing the use of wiretapping procedures is subject to the same stringent standards as other Fourth Amendment searches and seizures. *Katz v. United States,* 389 U.S. 347, 359, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *People v. Montoya,* 616 P.2d 156, 159, 44 Colo.App. 234, 237 (1980). Accordingly, the touchstone of a valid wiretap order is the determination by a detached and neutral magistrate that there is probable cause to believe that evidence of specific enumerated crimes will be obtained through use of the wiretap procedures. *See Montoya,* 616 P.2d at 159, 44 Colo.App. at 237; *United States v. Ramirez,* 63 F.3d 937, 941 (10th Cir.1995).

In addition to constitutional restraints, wiretapping procedures are governed by federal and state legislation. *See* 18 U.S.C. §§ 2510–2520 (2010); §§ 16–15–101 to –104, C.R.S. (2010). In fact, Colorado's wiretapping laws are "closely patterned after and designed to implement the policies of the federal act." *People v. Wahl,* 716 P.2d 123, 128 (Colo.1986). Consequently, federal court opinions addressing the federal wiretapping statute should be accorded great weight in interpreting Colorado's wiretapping statute. *Id.*

In an appeal from a grant of a motion to suppress, we review the trial court's factual findings on a clearly erroneous standard and we review questions of law de novo. *People v. Minor,* 222 P.3d 952, 955 (Colo.2010). A wiretap order, however, is presumed proper, and the defendant carries the burden of overcoming this presumption even if the defendant has prevailed below. *United States v. Mitchell,* 274 F.3d 1307, 1310–11 (10th Cir.2001) (citing *United States v. Castillo–Garcia,* 117 F.3d 1179, 1186 (10th Cir.1997)).

### 2. Neutral and Detached Magistrate

We first address the issue of whether suppression of the wiretap evidence was warranted based on the fact that the Chief Judge's son was a deputy district attorney in the same district at the time the wiretap orders were issued. We conclude that when issuing the wiretap orders, the Chief Judge acted as a detached and neutral magistrate, and therefore, the evidence should not have been suppressed on this ground.

The decision whether to suppress evidence obtained through a warrant is governed foremost by the constitutional principles of the Fourth Amendment. *See People v. McCarty,* 229 P.3d 1041, 1044 (Colo.2010). In order to satisfy the guarantees of the Fourth Amendment, "it is essential that a magistrate issuing a search warrant be neutral and detached...." *Ramirez,* 63 F.3d at 941. The question of whether a judge should recuse himself from a case, on the other hand, is guided by statutes and canons of judicial ethics. *People v. Julien,* 47 P.3d 1194, 1197 (Colo.2002). In this case, which deals with a motion to suppress, the trial court's order conflates these two questions, engaging in a statutory and ethical analysis when the proper inquiry is constitutional. We hold that the proper inquiry in a motion to suppress is not whether the judge issuing the warrant should have recused himself, but instead whether the judge manifested the

analysis that the trial court made findings as to additional defects with the wiretap application

process.

neutrality and detachment demanded by the Fourth Amendment.

We are not alone in concluding that a statutory disqualification analysis is not the relevant inquiry in determining whether a magistrate is detached and neutral under constitutional standards. Other courts have specifically declined to consider arguments based on statutory disqualification standards because they are "more demanding than that required by the Due Process Clause." *United States v. Harris*, 566 F.3d 422, 434 (5th Cir.2009) (citing *United States v. Couch*, 896 F.2d 78, 81 (5th Cir.1990)); *see also United States v. Murphy*, 768 F.2d 1518, 1540 (7th Cir.1985) (suggesting that judicial canons are not part of a Fourth Amendment analysis). The Supreme Court of Iowa explained that disqualification standards and rules of judicial ethics "are designed not to protect individual defendants, but to protect the judiciary from charges of partiality." *State v. Fremont*, 749 N.W.2d 234, 242 (Iowa 2008).

■■■ Because disqualification standards protect different interests than the Fourth Amendment, there are notable differences between a motion for disqualification and a motion to suppress evidence. Aimed at protecting public confidence in the judiciary, disqualification standards are concerned with the mere appearance of impartiality. As a result, the standard for granting a motion for disqualification goes beyond a search for actual bias, and instead requires disqualification of any judge whose impartiality might reasonably be questioned. C.J.C. 2.11(A). Although this broad, over-inclusive standard may disqualify a judge who is in fact completely neutral, the grant of a motion for disqualification does not result in a loss of evidence, but merely a substitution of the judge.

On the other hand, the Fourth Amendment strives to protect the rights of individual defendants, and therefore has as its concern the manifestation of impartiality. Thus, the standard for a motion to suppress focuses on the actual motivations of the magistrate who issued the warrant, and if the motion is granted, the result is the exclusion of any evidence obtained in violation of the defen-

dant's rights. Therefore, although a motion to suppress evidence involves a more limited inquiry, a grant of a motion to suppress has more severe consequences than a grant of a motion for disqualification. Accordingly, it is logical to impose a broader standard for a motion to disqualify a trial judge than for review of the issuance of a warrant.

Another reason to leave ethical canons out of a constitutional analysis is that rules of judicial ethics vary widely by jurisdiction. Consequently, importing these rules into a constitutional analysis would make the scope of a defendant's constitutional protection dependent upon the ethical considerations of the jurisdiction where the warrant was issued. *Fremont*, 749 N.W.2d at 242. Ethical canons may still be instructive in a Fourth Amendment analysis, but should not be the ultimate arbiter of constitutionality. Instead, our constitutional inquiry is focused on whether the magistrate manifested the neutrality and detachment required by the Fourth Amendment. Specifically, the question is whether there is any doubt that the issuance of the warrant was based on the existence of probable cause rather than the magistrate's own bias.

■■■ The vital importance of a neutral magistrate is aptly demonstrated in the notion that "a search premised on a warrant issued by a magistrate who lacks ... neutrality and detachment 'stands on no firmer ground than if there had been no warrant at all.'" *Ramirez*, 63 F.3d at 941 (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 453, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)). Like other warrants, wiretap orders are reviewed to "ensure that the issuing magistrate properly performed his function and did not 'serve merely as a rubber stamp for the police.'" *United States v. Kalustian*, 529 F.2d 585, 589 (9th Cir.1976) (quoting *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965)). In fact, "[t]he purpose of a warrant is to allow a neutral judicial officer to assess whether the police have probable cause to make an arrest or conduct a search." *Steagald v. United States*, 451 U.S. 204, 212, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981).

The Fourth Amendment states that "no Warrants shall issue, but upon probable cause...." This essential requirement is not only found in the Constitution; it is also codified in the wiretapping statute. A wiretap order may only be issued upon "showing by affidavit that there is probable cause to believe that evidence will be obtained of the commission of any one of the crimes enumerated ...." § 16–15–102(1)(a). In a wiretap application, the affidavit "serves the same function as an affidavit used to establish probable cause for a search warrant." *Wahl*, 716 P.2d at 127.

The facts upon which the magistrate bases the probable cause determination must be within the four corners of the affidavit. *People v. Gutierrez*, 222 P.3d 925, 937 (Colo.2009). Therefore, a reviewing court can easily ensure that the magistrate issuing the warrant had a substantial basis for concluding that there was probable cause. *People v. Arellano*, 791 P.2d 1135, 1138 (Colo.1990). This four-corners review serves as a guarantee that a magistrate has manifested the requisite neutrality and detachment required by the Fourth Amendment. Accordingly, when facing a disqualification argument against a judge who has issued a warrant, case law supports our earlier determination that a constitutional assessment of neutrality and probable cause is the proper standard of review rather than the "appearance of impropriety" standard found in statutes and ethical canons. For example, although the Tenth Circuit addressed the federal disqualification statute in *United States v. Guthrie*, its decision not to suppress did not turn on the disqualification analysis. 184 Fed.Appx. 804, 808 (10th Cir. 2006). Instead, the court looked to the four corners of the affidavit, holding that because the affidavit "was overwhelmingly sufficient to establish probable cause," and because there was no evidence that the magistrate based his decision on anything other than the facts in the affidavit, there was no reason to question the magistrate's impartiality. *Id.*[3]

Because the best indicator of a magistrate's lack of neutrality is a lack of probable cause in the affidavit, we review Chief Judge Samelson's determination of probable cause to confirm that the wiretap orders in this case were issued by a neutral and detached magistrate. We first note that the trial court did not discuss probable cause in the order, and neither the trial court nor the parties have argued that there was a lack of probable cause to issue the wiretap orders. As a result, we operate from the underlying assumption that probable cause did exist at the time the applications were filed. Nonetheless, because probable cause is reviewed from the four corners of the affidavit, and because we have the affidavits before us, we have made an independent determination that there was sufficient probable cause to issue the wiretap orders.

The affidavits attached to the wiretap applications are each between sixty-six and seventy pages. Each of the affidavits contains considerable background information about the investigation and the extensive qualifications of the affiant. In order to gather evidence on the alleged drug trafficking organization, the investigation utilized an undercover detective and a confidential informant. After receiving the phone number associated with Subject Telephone One from the confidential informant, the undercover detective engaged in several drug transactions over the phone by calling Subject Telephone One, and subsequently, after the owner of Subject Telephone One obtained a new phone number, Subject Telephone Two. Toll analysis on these numbers revealed that the most frequent calls associated with these phone lines were from numbers associated with ongoing drug investigations. Once the interceptions began on Subject Telephone Two, it was confirmed that the line was being used in furtherance of additional drug transactions. The interception also led to a search warrant for a residence where illegal

3. Our own court of appeals has employed a similar method. In *People v. Montoya*, the court determined that a magistrate was neutral and detached even though law enforcement had rushed him to the county line in order to execute a search warrant. 616 P.2d at 161, 44 Colo.App. at 240. Before even addressing the neutrality issue, however, the court of appeals emphasized that the affidavit contained sufficient probable cause. *Id.*

narcotics were found. Later in the investigation, the interception on Subject Telephone Four was requested because over one hundred calls were made between Subject Telephone Four and Subject Telephone Two, and the interception on Subject Telephone Two revealed that the owner of Subject Telephone Four was allegedly the supplier for the drug trafficking organization. Because these affidavits clearly demonstrate the existence of probable cause, we conclude that there is no evidence that Chief Judge Samelson based his decision on anything other than the seventy-page affidavits included with the wiretap applications.

Despite our emphasis on an analysis grounded in probable cause, we acknowledge that there are rare instances of actual bias where a court has granted a motion to suppress without even making a probable cause determination. In those cases the problem goes beyond an appearance of impropriety and instead includes a concern that the magistrate has an actual conflict so substantial that he or she cannot be considered neutral and detached. Consequently, regardless of the existence of probable cause, we may sometimes be required to examine the actions and motivations of the magistrate.

 When faced with a challenge to a magistrate's neutrality, the court must look at "the specific circumstances surrounding the issuance of the warrant and decide whether the magistrate manifested [the] neutrality and detachment demanded of a judicial officer when presented with a warrant application...." *Ramirez*, 63 F.3d at 941. For example, the Supreme Court has found a lack of neutrality and detachment in a case where the magistrate had a direct pecuniary interest in issuing search warrants and in a case where the magistrate actively participated in the investigation of the crime. *Connally v. Georgia*, 429 U.S. 245, 250, 97 S.Ct. 546, 50 L.Ed.2d 444 (1977) (declaring Georgia system unconstitutional because magistrates were paid based on number of warrants they issued); *Lo–Ji Sales, Inc. v. New York*, 442 U.S. 319, 326–27, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979)(holding that town justice was not detached and neutral when he joined the police search party). This has prompted one federal appellate court to conclude that there are two main ways that a magistrate can violate the neutrality requirement: having a substantial personal interest in the outcome or acting primarily in a law-enforcement capacity. *United States v. Hunter*, 4 Fed. Appx. 295, 301 (6th Cir.2001).[4]

Conversely, federal appellate courts have found that judges were sufficiently detached in cases where the judge had been in an adverse position to the defendant prior to becoming a judge and in cases where the judge had previously represented the defendant. *United States v. Bowling*, 619 F.3d 1175, 1186 (10th Cir.2010)(holding that judge was sufficiently impartial even though he stood in position adverse to defendant while working as bank's lawyer); *United States v. Montgomery*, 395 Fed.Appx. 177, 186 (6th Cir.2010) (holding that judge qualified as neutral and detached magistrate four years after he served as prosecutor in case against defendant); *Harris*, 566 F.3d at 434 (holding that magistrate was neutral and detached despite the fact that he represented defendant in an unrelated criminal matter six years earlier). Additionally, the Fifth Circuit found a magistrate to be sufficiently detached even though her spouse was a deputy with the sheriff's department who was not present during the search or issuance of the search warrant. *United States v. McKeever*, 906 F.2d 129, 131 (5th Cir.1990). Providing a common thread in the analysis of all these cases is the emphasis on the probable cause found in the affidavit and the absence of evidence of actual bias. *See, e.g., Bowling*, 619 F.3d at 1186.

We do not think the situation in the present case implicates the concerns of the neutrality and detachment requirement. The circumstances here involve a possible appearance of impropriety based on the fact that Chief Judge Samelson's son was employed by the District Attorney's Office. Although an

---

4. Providing another example of a magistrate acting in law-enforcement capacity, the Sixth Circuit found that a trial commissioner who also worked as an administrative assistant at a county jail was too involved in the activities of law enforcement to satisfy the neutrality and detachment requirement. *United States v. Parker*, 373 F.3d 770, 774 (6th Cir.2004).

appearance of impropriety might be grounds for recusal, this is very different from a situation where the magistrate is actively involved in the investigation or is getting paid for each search warrant issued. Here, there is no evidence that Chief Judge Samelson received any personal benefit by issuing the orders or that he was acting in a law enforcement capacity. On the contrary, this case is most analogous to *McKeever,* where a magistrate was found to be neutral despite her marriage to a deputy in the sheriff's department. Just like *McKeever,* Chief Judge Samelson is related to an employee of the department that sought the warrant, and also just like *McKeever,* Chief Judge Samelson's relative was not present during the issuance of the wiretap order and had no involvement in the case. Because there is no evidence suggesting that Chief Judge Samelson was involved with law enforcement or was receiving any personal benefit from the issuance of the warrants, and because the affidavits contained sufficient probable cause to issue the wiretap orders, we conclude that Chief Judge Samelson satisfied the neutrality and detachment requirement of the Fourth Amendment. Therefore, we hold that the wiretap evidence should not have been suppressed for lack of a neutral and detached magistrate.

### 3. Violations of the Wiretap Statute

We next address the alleged violations of the wiretap statute. Because the violations that did occur were not substantial and did not undermine the purpose of the statute or prejudice the defendant, we hold that the evidence should not have been suppressed on account of these violations.

Colorado's wiretapping statute permits an aggrieved person to move to suppress wiretap evidence if the communication is: (1) unlawfully intercepted; (2) the order of authorization or approval is insufficient on its face; or, (3) the interception was not made in conformity with the order of authorization or approval. § 16–15–102(10). In granting the motion to suppress, the trial court did not state under which ground it was suppressing, but it found that there had been a lack of compliance with both the statute and the

court orders. Accordingly, for violations that result in a lack of compliance with the statute, we will address whether the violation amounted to an unlawful interception under section 16–15–102(10). For violations that result in a lack of compliance with the court order, we will address whether the alleged violation results in the interception being made out of conformity with the order.

 Communications may be unlawfully intercepted on the basis of either constitutional or statutory violations. However, not every failure to comply with the wiretap statute renders the interception of electronic communications unlawful. *United States v. Donovan,* 429 U.S. 413, 433, 97 S.Ct. 658, 50 L.Ed.2d 652 (1977). The test is whether the allegations show "failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device." *United States v. Giordano,* 416 U.S. 505, 527, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974). Therefore, once it has been determined that there is a violation, the issue is whether the procedure that has been violated "plays a 'substantive role' with respect to judicial authorization of intercept orders and consequently imposes a limitation on the use of intercept procedures." *Donovan,* 429 U.S. at 435, 97 S.Ct. 658. We will not suppress wiretap evidence on the basis of a defect that does not undermine the purposes of the statute or prejudice the defendant. *United States v. Radcliff,* 331 F.3d 1153, 1163 (10th Cir.2003). Suppression is the appropriate remedy only if there is both lack of compliance with the wiretap statute and prejudice to a defendant. *People v. Milnes,* 527 P.2d 1163, 1166, 186 Colo. 409, 416 (1974).

#### a. Extension Application for Subject Telephone Two

 The trial court found several problems with the extension application for Subject Telephone Two. Foremost, the trial court was concerned because the application for extension on Subject Telephone Two was signed and notarized two days prior to the filing of the initial application. Based on this

oddity, the court found that the extension application was not made by the district attorney on oath or affirmation to a judge, and the court concluded that personal application was required by section 16–15–102(1)(a). Additionally, the trial court determined that the application was deficient for failing to contain either a statement about the results already obtained or a reasonable explanation of the failure to obtain any results. Based on our review of the evidence in the record before us, we disagree with both of these conclusions.

We note two problems with the trial court's finding that the application was not made by a district attorney upon oath or affirmation to a judge. First, upon closer inspection of the renewal application, it appears that the date was likely a clerical error. Second, even assuming it was not a clerical error, there is no evidence of a violation of the wiretap statute because despite the problem with the date, there is no evidence that the district attorney did not personally apply for the extension.

■ Clerical errors do not invalidate a wiretap application or order. *United States v. de la Fuente,* 548 F.2d 528, 537 (5th Cir. 1977). The original application for Subject Telephone Two was signed on the "21 day of July, 2009." The number "21" was written in by the notary and the rest of the date was typed. The application for renewal was signed before the notary on this "19 day of July, 2009." Once again, the "19" was written in by the notary and July was part of the typed form. Although the parties did not raise this in court, the body of the application contains evidence that the renewal application was in fact prepared and signed well after the initial application. Paragraph eight refers to events that occurred after the original application was filed. Specifically, paragraph eight lists the prior wiretap orders, including the initial order for Subject Telephone Two on July 22 and an order for Subject Telephone Three on July 30. The affidavit also discusses events that transpired and evidence that had been collected since the issuance of the order. Furthermore, the application was filed with the court on August 20, making it likely that the actual date

the application was signed was August 19, and that the notary simply did not notice that the form still said July. If this was a clerical error, as it appears, it does not provide a basis for suppression of all evidence obtained from the resulting wiretap order.

■ However, even assuming that the renewal application was signed on July 19, there still is no evidence to support the court's finding that the District Attorney did not personally apply for the extension, which is the factual predicate for the claimed violation of the wiretap statute at issue here. Section 16–15–102 requires that an application for a wiretap order be made by the district attorney or his designee upon oath or affirmation to a judge of competent jurisdiction. We have assumed that the district attorney must personally initiate the wiretap and must personally apply for any extension of the duration of the wiretap. *Milnes,* 527 P.2d at 1167, 186 Colo. at 417. When a defendant has introduced no evidence tending to show that the authorizing signature is inauthentic or that someone other than an authorized person approved the application, however, the evidence should not be suppressed. *de la Fuente,* 548 F.2d at 537.

Even assuming that the district attorney must personally apply for an extension of a wiretap order, we have not set out, and the statute does not require, a particular time for signature or notarization. Consequently, even if the district attorney signed the extension in advance, the district attorney has still personally applied for the extension. Although it certainly raises concerns to have a district attorney signing extension applications before an initial application has been filed, it does not raise the issue of whether personal application is required by the statute. The trial court has asserted that the violation is that the application was not made by the district attorney, but there is no evidence in the record to support that conclusion. The dispute here concerns when the application was signed rather than by whom it was signed. We hold that the early dating of the renewal application does not raise the question of whether there was a violation of the personal application requirement of the wiretap statute.

We also disagree with the trial court's conclusion that the application for extension on Subject Telephone Two is deficient for the lack of a statement of results. Section 16–15–102(2)(f) specifies that an application for an extension of a wiretap order must contain a statement setting forth the results obtained from the interception or a reasonable explanation of the failure to obtain results. Although the application itself does not contain such a statement, the affidavit attached to the extension application contains a detailed description of the results obtained from the interception on Subject Telephone Two. Because the affidavit is physically attached to and incorporated into the application, the application cannot be considered incomplete when the statement of results is contained in the affidavit. *See, e.g., People v. Gable,* 647 P.2d 246, 250 (Colo.App. 1982) (holding that an application satisfied the wiretap statute requirement of an exhaustion statement when the statement was contained in the accompanying affidavit).

Furthermore, wiretap authorization orders are presumed valid, and the sufficiency of the statement of results is a matter left to the discretion of the judge issuing the extension order. *Mitchell,* 274 F.3d at 1310–11; *see United States v. Vento,* 533 F.2d 838, 853–54 (3d Cir.1976). Likewise, where the objective of a wiretap is to identify the scope and participants of a large scale conspiracy, "the permissible duration of the wiretap is necessarily longer than where the investigation concerns only a single criminal episode." *Gable,* 647 P.2d at 251.

Here, Chief Judge Samelson did not abuse his discretion by finding that the affidavit satisfied section 16–15–102(2)(f). Proceeding suspect by suspect, the affidavit methodically provides a ten-page description of pertinent intercepted conversations and how each one is consistent with a drug transaction. The affidavit also makes it clear that the goals of the investigation had not yet been met. Law enforcement still sought to identify "additional members of the drug distribution organization . . ., residences, vehicles, storage facilities, time(s) of deliveries of the controlled substances to the organization, the transportation and disposition of drug proceeds, and the like. . . ." Based on our review of the affidavit and also taking into account that the wiretap orders at issue here were being used to investigate a large scale conspiracy, we see no support for the trial court's finding that the renewal application for Subject Telephone Two did not contain a statement of results sufficient to support the issuance of the extension order.

### b. Fifteen Day Reports

Next, the trial court found a lack of compliance with the reporting requirements contained in the wiretap orders. Section 16–15–102(7) permits, but does not require a judge issuing a wiretap order to include in the order a requirement for periodic reports, detailing what progress has been made toward the objective and the need for continued interception. If the judge does include such a provision, reports "shall be made at such times as the judge may require." In this case, the order contained a requirement that law enforcement provide a progress report to the court every fifteen days.

The trial court found that the fifteen-day reports in this case were not in compliance with the court's orders for three reasons: (1) no reports were filed for Subject Telephone One; (2) the reports filed for the other numbers did not adequately explain the progress that had been made; and (3) the fifth periodic report for Subject Telephone Two was not filed until five months after the interception had been terminated.

Because the wiretap statute does not require progress reports, thus allowing a judge to completely dispense with the requirement, the sufficiency of any progress reports required by a wiretap order is left to the discretion of the judge issuing the order. *In re DeMonte,* 674 F.2d 1169, 1174 (7th Cir.1982); *Vento,* 533 F.2d at 853–54. This rule applies even when no reports have been filed at all. For example, when the government does not submit a progress report because it has already discontinued the surveillance, and the judge who issued the wiretap order does not object to the failure to make the report, suppression is not required. *United States v. Breland,* 356 F.3d 787, 794 (7th Cir.2004).

Turning to the progress reports in the present case, and the first issue raised by the trial court, we hold that the lack of reports filed for Subject Telephone One did not warrant suppression. The facts here are similar to *Breland,* where the government did not submit a progress report because it had already discontinued surveillance. Here, wiretapping on Subject Telephone One was discontinued after ten days due to inactivity. Although there was not a progress report filed, various documents submitted to the court reported that interception on Subject Telephone One had been terminated. For example, the affidavit attached to the application for Subject Telephone Two explained that the reason for requesting interception on Subject Telephone Two was that the holder of Subject Telephone One lost his cell phone and got a new number, Subject Telephone Two. Additionally, all subsequent applications contained a summary of related wiretap applications and orders, which included a notation that interception on Subject Telephone One had been discontinued. Whereas Chief Judge Samelson was made aware of the discontinuance of the interception on Subject Telephone One, and presumably was satisfied with the information he was given despite the lack of a formal report, evidence should not be suppressed because of the missing progress reports.

■ Due to the optional nature of the reports, it was also within the Chief Judge's discretion to overlook the other alleged reporting problems. Despite the tardiness of one report and the alleged content deficiencies in the others, there is no evidence that the Chief Judge was dissatisfied with the reports. Therefore, the evidence should not have been suppressed due to the trial court's later determination that the reports were inadequate.

### c. Issues with Inventory Notice

■ The trial court was also concerned with the inventory notice provided to the subjects of the wiretap orders. Section 16–15–102(8)(d) requires the subjects of a wiretap order to be notified about the interceptions within a reasonable time, but not later than 90 days after the termination of the wiretap. Near the end of the interception period, Chief Judge Samelson granted the Deputy District Attorney additional time to provide notice due to the ongoing nature of the investigation. Nevertheless, no notice was ever given for Subject Telephone One, and the notice eventually given for Subject Telephone Two referred to "Subject Telephone Four" in the body of the notice. We hold that neither of these issues warranted suppression.

■ Although the failure to provide notice to the named parties in Subject Telephone One violated the statute, in this case, the failure cannot be said to have implicated a provision that plays a substantive role with respect to the judicial authorization of the intercept order. While the notice provision is important, the failure to comply does not make an interception unlawful. *Donovan,* 429 U.S. at 434, 97 S.Ct. 658. The intent of the notice provision is to ensure that authorized interceptions eventually become known to the subject. *Id.* at 438, 97 S.Ct. 658. Here, interception on Subject Telephone One was discontinued after ten days because there was no activity to intercept. The intended subject obtained a new cellular telephone, Subject Telephone Two, and was given notice of the resulting wiretap order on that telephone. Consequently, the intended subjects of the Subject Telephone One wiretap did not suffer any prejudice by not receiving notice of the original wiretap because no calls were ever intercepted on Subject Telephone One, and the subjects were properly notified that their calls on the replacement phone had been intercepted. Therefore, the objective of the notice provision was satisfied.

■ As to the other defect in notice, the mislabeling in the body of the notice, we note that if minor clerical errors do not invalidate a wiretap application or order, they also cannot invalidate a letter of inventory notice. The mislabeling that occurred did not prevent the notified parties from learning that their communications had been intercepted. As such, the spirit of the statute was satisfied and the parties were not prejudiced by this error. We hold that the notice issues did not warrant suppression of the evidence.

#### d. Pre-trial Copy of Order and Application

Lastly, the order from the trial court cites the failure to comply with section 16–15–102(9) as a reason for suppression. Section 16–15–102(9) conditions the admission of wiretap evidence on each party receiving a copy of the wiretap order and application not less than ten days before the court proceeding. The court may waive this requirement if it was not possible to provide the information in time and if the party will not be prejudiced by the delay. Here, the trial court found that the district attorney did not timely furnish the defense counsel with copies of the application, affidavits, and orders. The district attorney conceded that these items had not been provided to defense counsel at least ten days prior to the preliminary hearing. By failing to provide these documents, there has been a violation of section 16–15–102(9). We must now determine whether this violation warrants suppression of the evidence.

"The purpose of the 10–day requirement 'is to give the defendant an opportunity to make a pretrial motion to suppress wiretap evidence.'" *United States v. Tyler*, 42 Fed.Appx. 186, 195–96 (10th Cir.2002) (quoting *United States v. Caro*, 965 F.2d 1548, 1554 (10th Cir.1992)). As a result, suppression based on this violation requires a showing that the defendant suffered prejudice. *See id.* (citing *United States v. Winter*, 663 F.2d 1120, 1154 (1st Cir.1981)). Here, the defendants cannot claim that they suffered prejudice from the late delivery of materials because they not only filed a motion to suppress the wiretap evidence, but also initially succeeded on that motion. Therefore, we hold that this violation does not warrant suppression of the wiretap evidence.

### III. Conclusion

We reverse the trial court's decision to grant the motion for suppression of wiretap evidence. The wiretap orders were properly issued by a detached and neutral magistrate. Furthermore, any violations of the wiretap statute were not individually or collectively significant enough to warrant suppression of the evidence obtained as a result of the wiretap orders.